James L. Jenkins et al. [1] v. Commissioner. Jenkins v. Commissioner
Docket Nos. 32404-32409.
United States Tax Court
1954 Tax Ct. Memo LEXIS 320; 13 T.C.M. (CCH) 61; T.C.M. (RIA) 54031; January 26, 1954
*320 Lloyd H. Young, Esq., for the petitioners. James A. Anderson, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax as follows: Docket No.
Petitioner
Year
Amount
32404
James L. Jenkins
1946
$ 8,838.02
32404
James L. Jenkins
1947
16,141.07
32405
James L. and Mallie E. Jenkins
1948
3,633.42
32405
James L. and Mallie E. Jenkins
1949
3,800.06
32406
Victor Baldini
1946
14,342.45
32406
Victor Baldini
1947
8,644.88
32407
Victor and Florence Baldini
1948
7,492.66
32407
Victor and Florence Baldini
1949
17,561.10
32408
Robert E. Beery
1946
11,988.19
32408
Robert E. Beery
1947
13,759.48
32409
Robert E. and Anna Virginia Beery
1948
8,162.20
32409
Robert E. and Anna Virginia Beery
1949
17,564.40 The parties have submitted the case entirely upon a stipulation of facts which includes joint exhibits and the facts as thus stipulated are adopted as the findings of fact. The only issue for decision is whether the taxpayers, partners in strip-mining operations, are entitled to deduct in the taxable years amounts to represent the estimated cost *321 of replacing in a future year, the earth previously removed in order to mine the coal. This Court has consistently taken the position that such estimated expenditures may not be deducted as accrued expenses, ; ; , feeling that the question is controlled by , certiorari denied ; , affd. ; ; ; , affd. ; ; and . The Court of Appeals for the Fourth Circuit reversed the Harrold case, apparently in part at least, upon the theory that income of a strip-miner would be distorted if the expenses, which he would eventually have to incur in replacing the overburden were not deductible in the year in which the coal *322 was mined and sold. . The Court there seems to disagree with the decision in the Spencer, White & Prentis case. Some distinctions between the facts in the Harrold case and those in the Patsch and Vincent cases were pointed out in the opinions in the latter cases but this Court adhered to its view, expressed in the Harrold case, that estimated expenses of replacing the overburden can not be accrued until they are actually incurred and the amount is ascertainable, even though prudent businessmen might set up reserves on their books to cover such future liabilities. Here the partnerships through which the petitioners operate accrued in the year in which the coal was mined a liability for replacing the overburden in a later year. Actually the overburden was removed prior to the mining of any coal and whatever liability was incurred to replace it originated at that earlier date rather than at the time of the removal of the coal. The equity of allowing the eventual cost of backfilling to be offset against the income from mining the coal is obvious, but with the exception of the reversal in the Harrold case, and the approval of the *323 reasoning of that case in , affirming , the decided cases have held that Congress has not permitted any such deduction. West Virginia, where the coal in the present case was mined, like some other states, has endeavored by law to require backfilling so that the face of the earth may not be permanently distorted by this method of mining. The actual cost of backfilling might be so much in excess of the penalties imposed that the latter would not be effective. Obviously, deductions should not be allowed even for good estimates of the cost of backfilling, if the miner is not going to backfill. Indeed, it might be contrary to public policy to allow any deductions in such cases. Even where, as here, the backfilling is apparently going to be done, its cost depends to an important degree upon labor and other costs at the time the actual work is done and those costs are not ascertainable in advance. The Tax Court prefers to adhere to the principles set out in its earlier decisions, at least until such time as the difficulties in allowing the deductions appear less formidable. This case is not *324 distinguishable from the Patsch case, supra, which has recently been affirmed by the United States Court of Appeals for the Third Circuit, in that in both cases the taxpayer failed to show that the reserve set up represented a reasonable estimate of the ultimate expense of backfilling. No effort was made here to estimate each year the probable cost of backfilling the actual areas strip-mined during the year, no consideration was given to the depth of the overburden to be replaced, the distance it was to be moved, the drainage conditions, or the other physical factors with respect to the specific areas mined, nor was any consideration given to labor costs and availability of machinery. Each of the partnerships involved in this case set up "Reserve for Backfill" on their books at the end of 1947 by crediting to one control account an amount equivalent to 10 cents for each ton of coal which had been mined during that year. Additional amounts computed in a like manner were credited to the reserve as of the end of the years 1948 and 1949. The amounts credited were claimed as deductions and disallowed by the Commissioner. No backfilling operations were actually commenced and no expenses *325 incurred until some time in 1949 at which time the amounts actually paid or incurred were entered as debits in the Reserve for Backfill accounts. The Commissioner, in determining the deficiency, allowed the amounts thus debited to be deducted for 1949. The stipulation shows that there was a wide variation between the blanket estimates at 10 cents per ton and the actual costs of backfilling specific areas, so that even if the Court were willing to abandon its views in regard to the accounting principles and tax provisions involved, nevertheless the decision would have to be against the petitioners on authority of the Patsch case. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith; James L. Jenkins, Docket No. 32404; James L. and Mallie E. Jenkins, Docket No. 32405; Victor Baldini, Docket No. 32406; Victor and Florence Baldini, Docket No. 32407; Robert E. Beery, Docket No. 32408; and Robert E. and Anna Virginia Beery, Docket No. 32409.↩